UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CLIFTON TERRON LEE,

               Petitioner,                    Case No. 1:19-cv-595

v.                                      Honorable Robert J. Jonker

JOHN DAVIDS,

               Respondent.

_____/

## OPINION

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

## I.      Factual allegations

The Petitioner Clifton Terron Lee is incarcerated with the Michigan Department of Corrections at Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of assault with intent to commit murder (AWIM), Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. On September 8, 2016, the court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to a prison term of 35 to 70 years on the AWIM conviction, to be served consecutively to a 2-year prison term on the felony-firearm conviction.

On July 17, 2019, Petitioner timely filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on July 17, 2019. (Pet., ECF No. 1, PageID.16.)

The petition raises six grounds for relief, as follows:

I.      REMOVAL FROM THE TRIAL DURING VOIR DIRE REGARDING [PETITIONER'S] MINOR COMMENTS, NO WARNING BY JUDGE AND DEPRIVATION OF THE RIGHT TO COUNSEL REQUIRE A NEW TRIAL.

II.     IMPERMISSIBLE ARGUMENT DISGUISED AS EVIDENCE DEPRIVED [PETITIONER] OF A FUNDAMENTALLY FAIR TRIAL AND DUE PROCESS OF LAW.

III.    PROBATION OFFICER HEARSAY TESTIMONY AFFIRMING COMPLAINANT'S STORY REQUIRES A NEW TRIAL.

IV.    INEFFECTIVE OF CONSTITUTION [SIC] AND INEFFECTIVE ASSISTANCE OF COUNSEL.

V.      [PETITIONER] WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL WHERE THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE PROSECUTION TO IMPROPERLY

INTERJECT CRITICAL CASE-SPECIFIC FACTS ABOUT THE CASE TO FORM ITS QUESTIONS DURING VOIR DIRE; AND APPOINTED COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.

VI.     [PETITIONER'S] RIGHT TO DUE PROCESS WAS VIOLATED WHERE THE RECORD CLEARLY REVEALS THAT THE TRIAL COURT NEVER CONDUCTED AN ARRAIGNMENT AFTER THE PRELIMINARY EXAMINATION; AND COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.

(Pet., ECF No. 1, PageID.4, 6-7, 9, 11-12.)

The following facts are taken from the decision of the Michigan Court of Appeals, issued on January 16, 2018:

This case arises out of an incident in which Sammitrice Curry survived being shot multiple times. The shooting was the culmination of an ongoing conflict between Curry and defendant. Curry testified that on August 4, 2015, he got into an argument about "some rings" with a person named "T-Lee," who Curry identified as defendant.[1] The argument occurred near Curry's father's[2] home, which is near the intersection of Franklin and Eastern in Grand Rapids. Curry confronted defendant about the rings because he believed that defendant stole them from Curry's cousin, Takeen,[3] and he wanted to get the rings back. Curry testified that when he first approached defendant, it looked like defendant was reaching for a gun. Curry "got spooked," hit defendant, and "put him in a headlock," but let him go when he realized that defendant did not have a gun. Then Curry told Takeen to get the rings back from defendant. Takeen and defendant looked like they were going to fight, but then Takeen and Curry just left. Officer Ryan Manser, of the Grand Rapids Police Department, observed the altercation, and he testified that when the altercation ended he heard defendant say "something similar to 'I'm going to kill that nigger.'"

On August 6, 2015, according to Curry, he was in his car on his way home at approximately 3:00 a.m. when he saw defendant's brother Cliff Pimpleton. Curry was friends with Cliff, and he was going to ask Cliff if "everything was cool" with defendant. Then Curry saw defendant walking a little behind Cliff. Curry testified that he drove around the block and parked in the driveway of his father's house. Curry got out of the car and walked down the driveway toward the street. At that point, he saw defendant come around the corner, and defendant was alone. Curry testified that he was familiar with defendant; that although it was dark outside, there were street lights and he could easily see defendant; and that he did not have any doubt that it was defendant. According to Curry, defendant had a handgun, and once he saw him, defendant started shooting. Curry testified that he went down to the ground after the first shots, and defendant kept shooting.[4] Curry put his hand to the side and "started jumping around on the ground" and moving around so defendant could not hit him. Curry testified that he was shot in the testicles, and he

"screamed out" that he had been shot. Then defendant "just took off running." Curry was certain that defendant shot him and not Cliff.

Curry spoke to the police while he was in the hospital, but he did not tell the police that defendant shot him. Curry testified that he told the police that he did not know who shot him and that he described the shooter to the police as somebody who was wearing a red sweatshirt. Curry further testified that he had made up that story and was lying to the police that day about who shot him. According to Curry, he lied because he wanted to "let it go or try to get back or something," he was afraid, he did not want to go to jail, and he did not want to be labeled or targeted as a "snitch." Curry also testified that he called his parole officer, Kimberly Williams, on the day he was shot. He remembered speaking to her but did not recall telling her who shot him because he "was all drugged up and stuff" and had undergone surgery.

According to Williams, Curry called her on August 6, 2015, and told her that he was in the hospital because he had been shot seven times. She asked him who would do this to him, and Curry replied, "someone named T." Curry told her that he thought he was shot because of a previous altercation involving some jewelry that was taken from his cousin. Williams testified that Curry indicated that he had not given this information to the police and that she encouraged him to do so.

Curry did not begin cooperating with the police until August 31, 2015, when he went to the police station and told the police what happened. Curry testified that he decided to come forward after further encounters with defendant, including seeing defendant with a gun, which made him feel afraid.

Defendant was arrested on September 1, 2015, and he was charged in connection with the shooting with one count of AWIM and one count of felony-firearm. After his first trial ended in a mistrial on August 5, 2016, he was retried. His second trial began on August 8, 2016, and it is only this second trial that is at issue on appeal.[5] At the second trial, defendant did not testify or present any other witnesses. However, the prosecution introduced the audio recording of defendant's testimony from his first trial. Defendant testified that he and Curry "got into a scuffle" near the intersection of Franklin and Eastern on August 4, 2015, but he did not know at the time what the scuffle was about. Curry accused him that day of stealing some rings from Curry's cousin. Defendant testified that he had only bought rings from Takeen and that the scuffle ended when defendant walked away. Defendant further testified that he was not in the area of Franklin and Eastern during the early morning hours of August 6, 2015. He explained that "there was a lot of marijuana," and he testified, "I had to really remember, sit down and think who I was with; but I was with one of my girls." Defendant further testified that he had never carried a gun, did not own a gun, and was not involved in the shooting. The jury found defendant guilty of AWIM and felony-firearm. This appeal followed.

[1] The parties also stipulated at trial that defendant's nickname is "T-Lee."

[2] Curry's father was not identified by name.

4

³ Takeen was not identified by last name.

⁴ Grand Rapids Police Officers Ben Johnson and Travis Bravata testified that several bullet casings were found at the scene.

⁵ All of the testimony discussed in this opinion was introduced during defendant's second trial, and defendant's appellate issues pertain only to his second trial.

*People v. Lee*, No. 334920, 2018 WL 442854, at *1-2 (Mich. Ct. App. Jan. 16, 2018).

Petitioner appealed his convictions to the Michigan Court of Appeals.  In the brief filed by counsel, Petitioner raised the issues presented in habeas grounds I through IV.  In a pro per supplemental brief, Petitioner raised the issues presented in habeas grounds V and VI.  The Michigan Court of Appeals, in a 19-page unpublished opinion issued on January 16, 2018, denied all claims for lack of merit or harmless error and affirmed Petitioner's convictions.  *Id.*

Petitioner sought leave to appeal to the Michigan Supreme Court, apparently raising the same six grounds for relief.  The supreme court denied leave to appeal on July 27, 2018.

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Discussion

### A.  Ground I:  Removal from Courtroom During Voir Dire—Confrontation & Denial of Counsel

In his first ground for relief, Petitioner makes two arguments about the impropriety of his removal from the courtroom during voir dire. First, he contends that his rights under the Fifth, Sixth, and Fourteenth Amendments were denied when he was removed without warning from the courtroom. Second, he argues that he was constructively denied his right to counsel during a critical stage of the proceedings, in violation of the Fifth, Sixth, and Fourteenth Amendments.

#### 1.    Due Process & Confrontation Clause

Petitioner first argues that he was denied his right to be present in the courtroom during voir dire, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments and the Confrontation Clause of the Sixth Amendment. Although the Michigan Court of Appeals purported to apply only plain-error review, it thoroughly addressed the argument on the merits:

> The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees "the accused's right to be present in the courtroom at every stage of his trial." *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970).[7]

The right to be present is also "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v Gagnon*, 470 US 522, 526; 105 S Ct 1482; 84 L Ed 2d 486 (1985). This right is also protected by the analogous provisions of the Michigan Constitution. *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984).[8] Accordingly, "[a] defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected." *Id.* at 247; see also *Buie*, 298 Mich App at 56. Defendants charged with a felony also have a statutory right to be present at trial. MCL 768.3 ("No person indicted for a felony shall be tried unless personally present during the trial . . . .").

However, "it is within the trial court's discretion to remove a defendant from the courtroom if the defendant's behavior is disruptive." *Buie*, 298 Mich App at 58. The United States Supreme Court has held that a defendant may lose the right to be present during trial "if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 US at 343. The defendant may reclaim this right "as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.* "[T]he test for whether defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence." *Buie*, 298 Mich App at 59 (quotation marks and citation omitted; alteration in original). "[I]t is no longer the law that injury is conclusively presumed from defendant's every absence during the course of a trial." *Id.* (quotation marks and citation omitted).

In this case, defendant made several verbal interjections while the prosecutor was asking questions of the potential jurors during voir dire, and the trial court instructed defendant to "please be quiet" and further stated, "I'm not going to permit you to be speaking." Defendant persisted in interrupting the proceedings, and the trial court ordered defendant to be excused from the courtroom. Although the trial court instructed defendant more than once to refrain from speaking before it ordered defendant to be removed from the courtroom, the trial court never specifically warned defendant that removal was a potential consequence of refusing to obey the trial court's instructions to be quiet. While it is impossible to discern the tone or volume of defendant's voice from the transcript, there is nothing in the record from which we can definitively conclude that defendant's interjections were accompanied by any kind of physical disruption or that they were actually abusive or threatening. Therefore, in this set of factual circumstances, the trial court's removal of defendant from the courtroom during voir dire without a prior warning may have been erroneous. *Allen*, 397 US at 343; *Buie*, 298 Mich App at 59.

Even assuming the error occurred, in the instant case it does not require reversal because defendant was not prejudiced. Defense counsel conducted voir dire in such a manner that he attempted to minimize as much as possible the damage caused in front of the jury by defendant's conduct. The juror in Seat 14, who expressed the clearest hesitation about being fair to defendant as a result of the outburst, was excused from the jury for cause. Defense counsel also questioned other jurors about any influence that the outburst had on them and secured their indications that they could set aside the outburst, treat defendant fairly, and decide the case based on the evidence. Defense counsel expressed his satisfaction with the jury that was eventually selected. The record indicates that when defendant was removed, he was taken to a holding cell where he could still hear the proceedings by electronic communication. Defendant was permitted to return to the courtroom after being absent only for voir dire and was told that he could remain in the courtroom as long as he behaved appropriately. The record reflects that defendant was present in the courtroom for the rest of trial. Because defendant only missed a limited portion of the trial and defense counsel effectively and adequately worked to secure for defendant a jury comprised of individuals who would treat him fairly, defendant has not demonstrated that he was prejudiced by his absence during voir dire. *Buie*, 298 Mich App at 59, 60.

Additionally, defendant has failed to establish prejudice in light of the significant testimonial evidence of defendant's guilt. Curry testified that he saw defendant come around the corner and shoot at him multiple times with a handgun after Curry and defendant had been in an altercation two days earlier. Curry testified that he could easily see defendant and had no doubt that defendant shot him. There was testimony that Curry was shot approximately four to eight times and that he suffered gunshot wounds to his arm, thighs, buttocks, and scrotum. Additionally, Curry's parole agent, Williams, testified that Curry called her from the hospital on the day of the shooting and told her that "T" shot him, and the parties stipulated at trial that defendant's nickname was "T-Lee." Officer Manser testified that he saw the first argument between defendant and Curry that had occurred two days before the shooting and that he heard defendant make a comment at that time to the effect that he was going to kill Curry. Based on this evidence, a reasonable jury could conclude that defendant intended to kill Curry when he shot him multiple times with a handgun and could therefore find defendant guilty of AWIM and felony-firearm. Although Curry testified that he had initially lied to the police by not indicating that defendant shot him, and defendant testified that he was not involved in the shooting and did not own or carry a gun, credibility assessments are made by the jury. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Therefore, in light of defense counsel's efforts during voir dire to secure an impartial jury for defendant and the evidence of defendant's guilt introduced at trial, reversal is not required in this case based on the trial court's error in removing defendant from the courtroom during voir dire because there is no reasonable probability that the outcome of the trial was affected, and the evidence does not support a conclusion that defendant is actually innocent or that the error affected

the fairness, integrity, or public reputation of judicial proceedings. *Carines*, 460 Mich at 763-764; *Buie*, 298 Mich App at 60.

Defendant's additional argument that the focus on defendant's outburst created a distraction for the jury is without merit. Defendant relies on *Gravely v Mills*, 87 F3d 779 (CA 6, 1996),[9] without explaining how this case supports his argument. *Gravely* is inapplicable to the instant case because *Gravely* involved prosecutorial misconduct resulting from the prosecutor's repeated, improper references to the defendant's post-*Miranda*[10] silence. *Gravely*, 87 F3d at 782, 784, 786, 788-790. In the instant case, however, any "distraction" was the result of defendant's decision to create a disturbance during his trial by interrupting the prosecutor's questioning of potential jurors during voir dire. To the extent this became a focus during voir dire, it was only the result of an attempt to ensure an impartial jury for defendant. Potential jurors were questioned to make sure that they could set aside defendant's outburst, decide the case based on the evidence, and treat defendant fairly. When prospective jurors "have been sworn to tell the truth, and testify under oath that they can be impartial, the initial presumption is that they are honoring their oath and are being truthful." *People v DeLisle*, 202 Mich App 658, 663; 509 NW2d 885 (1993).[11]

[7] See also US Const, Ams VI and XIV.

[8] See also Const 1963, art 1, §§ 17 and 20.

[9] "Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013).

[10] *Miranda v Arizona*, 384 US 436, 444-445; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[11] The potential jurors in the instant case were sworn before voir dire began.

*People v. Lee*, No. 334920, 2018 WL 442854, at *3-4 (Mich. Ct. App. Jan. 16, 2018).

With respect to the standard to be applied to Petitioner's first question—whether the trial court committed constitutional error by removing Petitioner from the courtroom without warning—the court of appeals correctly identified and applied controlling Supreme Court precedent. *See Illinois v. Allen*, 397 U.S. 337 (1970). In *Allen*, the Supreme Court held that one of the most basic rights protected by the Confrontation Clause of the Sixth Amendment, made applicable to the states under the Due Process Clause of the Fourteenth Amendment, is the right of an accused to be present in the courtroom at every stage of his trial. *Id.* at 338 (citing *Lewis v. United States*, 146 U.S. 370 (1892)); *see also Kentucky v. Stincer,* 482 U.S. 730, 745 (1987) ("[A]

defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.")

The *Allen* Court, however, rejected the notion that the right to be present is absolute, regardless of the conduct of the defendant. *Id.* at 342. "'No doubt the privilege (of personally confronting witnesses) may be lost by consent or at times even by misconduct.'" *Id.* at 342-43 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934)). The Court recognized the necessity of order and decorum to the proper administration of criminal justice. *Id.* at 343. It held that, under the circumstances of the case, involving the defendant's repeated and extreme contumacious behavior, despite the trial court's repeated warnings that he would be removed from the courtroom if he persisted in that behavior, the defendant's removal from the courtroom did not violate the defendant's rights under the Sixth and Fourteenth Amendments. *Id.*

Petitioner argues, and the Michigan Court of Appeals agreed, that here, unlike in *Allen*, the trial court did not warn Petitioner that he would be removed from the courtroom if he continued to interject. Instead, the trial court repeatedly instructed Petitioner to "be quiet" and informed him that he would not be permitted to interrupt with comments. Petitioner, however, continued his interruptions. As the Michigan Court of Appeals noted, the trial court's failure to warn Petitioner about the possibility arguably violated *Allen*. *See Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008) (holding that "*Allen* stands for the proposition that a trial court must warn a defendant of the possible consequences of continued misbehavior prior to removing him from the courtroom . . . .").

Even if the trial court violated *Allen* when it removed Petitioner from the court room without prior warning, Petitioner is not entitled to relief if the error was harmless. For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it error resulted in 'actual prejudice.'" *Brecht v. Abrahamson*,

507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 at 637 (internal quotation marks omitted). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

The state court, applying "plain error" review, concluded that reversal was not warranted, because Petitioner was not prejudiced by his absence. *Lee*, 2018 WL 442854, at *3-4. If the state court reviews a claim only for plain error, the decision is nevertheless entitled to AEDPA deference. *See Stewart v. Trierwailer*, 867 F.3d 633, (6th Cir. 2017) (resolving conflict between *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009), and *Frazier v. Jenkins*, 770 F.3d 485, 496 n.5 (6th Cir. 2014)). In reaching its decision that Petitioner was not prejudiced, the court of appeals identified numerous facts that supported its finding. Those facts are entitled to a presumption of correctness, which Petitioner must overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Smith*, 888 F.2d at 407 n.4 (6th Cir. 1989). Petitioner does not challenge any of the court's factual findings in his habeas petition. He simply suggests that the court should have come to a different conclusion. Because Petitioner fails to meet his burden, the Court accepts the court of appeals' findings of facts as correct.

As the court found, Petitioner was out of the court room for only a limited portion of the trial. Trial counsel conducted a careful voir dire, designed to mitigate any prejudice that could arise from Petitioner's behavior or removal from the court. One juror was excused for cause,

because he expressed hesitation about whether he could be fair to Petitioner after Petitioner's outbursts. All other jurors indicated that they could disregard the outburst and decide the matter fairly and only on the facts. Petitioner could still hear the proceedings by way of electronic communications. And Petitioner provided no argument, much less evidence, that he wanted, but was unable to, send a message to counsel about the ongoing voir dire. As a consequence, Petitioner identifies no prejudice to the voir dire from his absence.

In addition, as the court of appeals found, the jury's verdict is supported by significant testimonial evidence of Petitioner's guilt. The victim testified that he knew Petitioner and that it was Petitioner who shot him multiple times. Although the victim initially told the police that he did not know who shot him, he called his parole agent from the hospital on the day he was shot and, when asked, told her that it was "T" who shot him. The parties stipulated that "T-Lee" is Petitioner's nickname. The victim ultimately told the police, explaining that he had delayed doing so because he was afraid, given Petitioner's gang affiliation, wanted to let it go, and did not want to be a snitch. Under these circumstances, the victim's initial lie to the police and delay in identifying Petitioner was explained, and the victim's story at trial was consistent with the one given to his parole officer on the day he was shot. As a result, it provided little impeachment value at trial. Further, according to the victim's testimony, the victim was in an altercation with Petitioner two days earlier about some rings that the victim believed were stolen. Petitioner acknowledged the altercation in his testimony at the first trial, which was admitted at the second trial, but he contended that he had bought the rings. The altercation between the victim and Petitioner also was witnessed by a police officer, who testified that, after the incident, he overheard Petitioner threaten to kill the victim.

As earlier discussed, these facts, as found by the court of appeals, are entitled to a presumption of correctness, which Petitioner bears the burden of overcoming by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Smith*, 888 F.2d at 407 n.4.  Petitioner makes no attempt to dispute the court of appeals' factual findings.  This Court therefore accepts them as true.

Taken together, the evidence against Petitioner was strong.  In light of these facts, the state court concluded that Petitioner had not suffered prejudice caused by his absence from the courtroom.  On the same facts, the Court concludes that Petitioner fails to demonstrate actual prejudice within the meaning of *Brecht*—that is, he fails to show that the trial error of federal law had "'substantial and injurious effect or influence in determining the jury's verdict.'"  As a consequence, Petitioner is not entitled to relief on his first habeas ground, because any error was harmless.

2.      Denial of Counsel at Critical Stage of the Proceedings

Petitioner argues that his removal from the courtroom also constructively denied him his Sixth Amendment right to counsel, because he was deprived of his attorney while he was removed from the courtroom.  The Michigan Court of Appeals considered and rejected Petitioner's Sixth Amendment claim, as follows:

> We also reject defendant's argument that he was constructively denied the right to counsel as a result of being unable to communicate with counsel while he was absent from the courtroom during voir dire.  "Defendants who face incarceration are guaranteed the right to counsel at all critical stages of the criminal process by the Sixth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment."  *People v Willing*, 267 Mich App 208, 219; 704 NW2d 472 (2005) (citation omitted).  "It is well established that a *total or complete deprivation of the right to counsel* at a critical stage of a criminal proceeding is a structural error requiring automatic reversal."  *Willing*, 267 Mich App at 224 (emphasis added; citations omitted); see also, e.g., *United States v Cronic*, 466 US 648, 659 & n 25; 104 S Ct 2039; 80 L Ed 2d 657 (1984) (stating that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial" and that "[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding").

In this case, however, defendant was not deprived of counsel. Although defendant was removed from the courtroom during a portion of voir dire, defense counsel was not absent during that time. Defendant has not provided any legal authority to support his argument that he was totally deprived of counsel as a result of his inability to communicate with counsel while he was absent from the courtroom, and defendant's argument is without merit nonetheless. The United States Supreme Court has held that a trial court's "order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct-and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment," reasoning that an overnight recess was a time "when an accused would normally confer with counsel." *Geders v United States*, 425 US 80, 82, 91; 96 S Ct 1330; 47 L Ed 2d 592 (1976). However, in the instant case, the trial court did not order defendant and defense counsel not to communicate, and there is no indication in the record that the trial court denied any request by defendant to communicate with his counsel or that defendant ever made such a request.

Furthermore, defense counsel could, and did, adequately represent defendant during voir dire without defendant's input. This Court has stated that "an attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, which we normally decline to evaluate with the benefit of hindsight." *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001) (citations omitted). The United States Supreme Court has also recognized that "the lawyer has—and must have—full authority to manage the conduct of the trial" and that "[t]he adversary process could not function effectively if every tactical decision required client approval." *Taylor v Illinois*, 484 US 400, 418; 108 S Ct 646; 98 L Ed 2d 798 (1988);[12] see also *People v Carter*, 462 Mich 206, 218-219; 612 NW2d 144 (2000) (noting that "counsel has full authority to manage the conduct of the trial and to decide matters of trial strategy"). In the instant case, the trial court did not give any order that prevented defense counsel from carrying out his duties to represent defendant, and defendant is not entitled to relief on this ground because he was not totally deprived of the right to counsel at a critical stage of his criminal proceedings and thus was not denied due process. *Cronic*, 466 US at 659 & n 25; *Willing*, 267 Mich App at 219, 224.

---

[12] As the United States Supreme Court also acknowledged, there are certain "basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client," such as the constitutional right to plead not guilty and have a trial and the right to be present during trial. *Taylor*, 484 US at 417-418, 418 n 24. However, in this case, defense counsel did not purport to waive any of defendant's rights. Defendant had a trial, and he was only removed from the courtroom during a portion of voir dire based on his own disruptive behavior, after which he returned to the courtroom and was present for the remainder of his trial. Defense counsel remained in the courtroom as defendant's advocate while defendant was absent, and defense counsel was not prevented from representing defendant's interests or making tactical decisions regarding jury selection. *Cronic*, 466 US at 659 & n 25; *Taylor*, 484 US at 418; *Johnson*, 245 Mich App at 259.

*Lee*, 2018 WL 442854, at *4-5.

In *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court held that the denial of counsel during a critical stage of the proceeding amounts to a *per se* denial of the effective assistance of counsel. In such circumstances, the court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. "In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed." *Mitchell v. Mason*, 325 F.3d 732, 741 (6th Cir. 2003).

Subsequently, in *Bell v. Cone*, 535 U.S. 685 (2002), the Supreme Court summarized the differences between ineffective-assistance-of-counsel claims governed by *Strickland v. Washington*, 466 U.S. 668 (1984), and ineffective-assistance-of-counsel claims governed by *Cronic*. *See Henness v. Bagley*, 644 F.3d 308, 323-24 (6th Cir. 2011) (citing *Bell*, 535 U.S. at 695-96 (2002); *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007); *Mitchell*, 325 F.3d at 742). If a claim is governed by *Strickland*, a defendant must typically demonstrate that specific errors made by trial counsel caused the defendant to suffer prejudice; that is, the errors affected the ability of the defendant to receive a fair trial (or caused him to plead guilty). If a claim is governed by *Cronic*, on the other hand, the defendant need not demonstrate any prejudice resulting from the lack of effective counsel. *Mitchell*, 325 F.3d at 742 (citing *Bell*, 535 U.S. at 695); *see Woods*, 575 U.S. at 317-18 ("*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'") (quoting *Cronic*, 466 U.S. at 658). Three types of cases warrant the presumption of prejudice: (1) when the accused is denied the presence of counsel at a critical stage; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when counsel is placed in circumstances in which competent counsel very likely could not render assistance. *Henness*, 644

F.3d at 323-24 (citing *Bell*, 535 U.S. at 695-96)); *see also Ivory*, 509 F.3d at 294; *Mitchell*, 325 F.3d at 742.

The Supreme Court has never held that a defendant's brief absence from the courtroom while defense counsel continues to represent the defendant in the courtroom constitutes a denial of counsel at a critical stage of the proceedings as contemplated by *Cronic*. In *Woods*, 575 U.S. at 316-17, the Court considered the Sixth Circuit's extension of *Cronic* to a circumstance in which defense counsel was absent from the courtroom for ten minutes of trial proceedings following a break. During counsel's absence, the trial court only discussed the admission of a chart showing calls between other co-defendants, to which Woods' attorney had indicated before the break that he took no position, because the chart did not impact his case. Woods' counsel returned to the courtroom while the discussion was still ongoing, and he again indicated that he took no position on the issue. *Id.* at 314. The state courts found no violation of *Cronic*. On habeas review, the Eastern District of Michigan found, and the Sixth Circuit affirmed, that the attorney's absence denied the petitioner his right to effective assistance of counsel under *Cronic*, without need to consider whether the petitioner suffered prejudice. *Id.* at 314-15.

The *Woods* Court rejected the Sixth Circuit's application of *Cronic*, holding that the Supreme Court had never applied *Cronic* in such circumstances. In reaching its decision, the Court reminded the lower federal courts that, if "none of [the Supreme Court's] cases confront 'the specific question presented by [a] case,' the state court's decision could not be "contrary to" any holding from th[[e] [Supreme] Court." *Woods*, 575 U.S. at 317. In other words, if the case is only similar to a Supreme Court decision, the state court's decision cannot be contrary to the Supreme Court's holdings. *Id.* at 318. Moreover, the *Woods* Court held that the Sixth Circuit had interpreted the *Cronic* standard incorrectly when it concluded that the state court's decision constituted an unreasonable application of clearly established Supreme Court precedent. *Id.* (holding that

"*Cronic* applies 'in circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'") (quoting *Cronic*, 466 U.S. at 658). The Supreme Court again repeated its prior warnings about the narrow circumstances in which a court on habeas review may overturn a state-court decision: "'[W]here the "'precise contours'" of [a] right remain ""'unclear,"'" state courts enjoy "broad discretion" in their adjudication of a prisoner's claims.'" *Id.* (quoting *White*, 572 U.S. 415, 424 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (in turn quoting *Harmelin v. Michigan*, 501 U.S. 957, 958 (1991)))).

The instant case presents an issue much farther away from the circumstances in *Cronic* than the *Woods* case. No Supreme Court precedent suggests, much less holds, that a defendant is deprived of his right to an attorney when the defendant is removed from the courtroom for misbehavior, but the attorney continues to represent the defendant in conducting voir dire. In the absence of clear Supreme Court precedent, the state court's denial of Petitioner's claim on appeal was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

## B. Grounds II & V: Prosecutorial Misconduct—Soliciting Evidence of Gang Affiliation and Commenting on that Evidence

In his second ground for habeas relief, Petitioner contends that the prosecutor committed misconduct, in violation of Petitioner's right to due process, by soliciting evidence that Petitioner was part of a notorious local gang, the Bemis Boys.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability

of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of a prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

   "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

   The Michigan Court of Appeals thoroughly discussed and rejected Petitioner's second habeas ground:

> "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v. Dobek*, 274 Mich. App. 58, 63; 732 N.W.2d 546 (2007).  "A prosecutor may not intentionally inject inflammatory arguments with no apparent justification except to arouse prejudice." *People v. Lee*, 212 Mich. App. 228, 247; 537 N.W.2d 233 (1995).  "Issues of prosecutorial misconduct are

decided case by case, with the reviewing court examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v. Akins*, 259 Mich. App. 545, 562; 675 N.W.2d 863 (2003) (quotation marks and citation omitted). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial," and "[t]hey are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v. Unger*, 278 Mich. App. 210, 236; 749 N.W.2d 272 (2008).

In this case, Curry's credibility with respect to his delayed identification of defendant as the shooter was a central issue of the trial, and it was made an issue from the beginning of trial. During opening statements, defense counsel presented the jury with the defense theory that Curry was falsely accusing defendant of being the shooter because Curry and defendant had previously had a disagreement over some rings. Curry testified that two days before the shooting occurred, he had confronted defendant because he thought defendant had stolen "some rings" from his cousin. The argument involved a brief physical altercation, after which, the parties went their separate ways. Additionally, Curry testified that after the shooting, he initially lied to the police by telling them that he did not know who shot him but later told the police that defendant shot him. Curry indicated that he initially refrained from cooperating with the police out of fear. However, the defense theory was that Curry initially told the truth when he indicated that he could not identify the shooter and that Curry lied when he subsequently implicated defendant.

"A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Dobek*, 274 Mich. App. at 64. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id.* In this case, defendant's prosecutorial misconduct argument focuses on the prosecutor's elicitation of testimony referring to defendant's alleged gang affiliation, and when an "issue is as much an evidentiary issue as it is a prosecutorial misconduct matter," this Court "focus[es] on whether the prosecutor elicited the testimony in good faith." *Id.* at 70-71. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id.* at 70.

Thus, to analyze defendant's appellate claim, certain evidentiary principles are pertinent. "[I]t is well settled that identity is an element of every offense." *People v. Yost*, 278 Mich. App. 341, 356; 749 N.W.2d 753 (2008). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, [the Michigan Rules of Evidence], or other rules adopted by the Supreme Court," and "[e]vidence which is not relevant is not admissible." MRE 402. However, "[e]vidence need not be directed at an element of the offense or a defense to be material." *People v. McGhee*, 268 Mich. App. 600, 637; 709 N.W.2d 595 (2005). "[E]vidence is relevant when it affects the

credibility of the victim and when it affects the credibility of witnesses who enhance the victim's credibility." *People v. King*, 297 Mich. App. 465, 476–477; 824 N.W.2d 258 (2012). "[T]he jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence that might bear on the accuracy and truth of a witness' testimony." *People v. Layher*, 464 Mich. 756, 765; 631 N.W.2d 281 (2001) (quotation marks and citation omitted); see also *King*, 297 Mich. App. at 477.

In this case, the prosecutor asked Curry, "who are [defendant's] friends that make you afraid" and Curry responded, "I guess he affiliated with the Beemis guys or whatever." The question was asked within the context of an extended series of questions about why Curry initially lied to the police and why he subsequently changed his mind and decided to tell police that defendant was the shooter. Curry had already testified that he initially lied to the police because he was afraid of being targeted on the streets as a "snitch" and was afraid of defendant's friends. During the prosecutor's cross-examination of defendant, he admitted that he was associated with this gang but denied being "from the gang."

In light of the defense theory at trial, evidence of defendant's gang affiliation and Curry's fear of defendant's friends who were in the gang was relevant to explaining why Curry delayed in identifying defendant as the shooter; this explanation made it more probable that Curry's identification of defendant was truthful. MRE 401; *Yost*, 278 Mich. App. at 356. It was important for the jury to hear evidence explaining this delay in order to assess the accuracy and truth of Curry's testimony, especially since Curry was the only witness to identify defendant as the shooter. *Layher*, 464 Mich. at 765; *Yost*, 278 Mich. App. at 356. Defendant never objected to the admissibility of the brief references to the name of the gang. Therefore, based on the relevance of this evidence, the prosecutor's questioning was merely a reflection of a good-faith effort to present admissible evidence, which is not misconduct. See *Dobek*, 274 Mich. App. at 70 (concluding that a prosecutor's challenged conduct was not an effort to admit evidence in bad-faith where the evidence at issue was "arguably admissible"). Therefore, defendant has not established error requiring reversal based on his unpreserved claim of prosecutorial misconduct. *Ackerman*, 257 Mich. App. at 448-449.

*People v. Lee*, 2018 WL 442854, at *6-7. Although the Michigan Court of Appeals' decision does not cite to federal constitutional cases, the standard it applied was consistent with the previously recited federal standard for prosecutorial misconduct.

As the court of appeals recognized, Petitioner's prosecutorial-misconduct claim is intertwined with, indeed, dependent upon, a determination that the evidence was improperly admitted. *See Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009) (recognizing that a claim of

prosecutorial misconduct based on the allegedly improper admission of evidence was really a challenge to the admissibility of the evidence). The court of appeals held that the evidence elicited by the prosecutor was relevant and properly admitted into evidence, as it affected the victim's credibility by explaining his reason for not immediately identifying Petitioner as his assailant.

The Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), that an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000). A federal habeas court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard. To the extent that Petitioner suggests that evidence of Petitioner's gang affiliation was inadmissible under state law, this Court has no power to intervene. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502

U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law . . . ."); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013).

Moreover, the Supreme Court has never held that evidence of gang affiliation, introduced under these circumstances, constitutes a due process violation. As a consequence, the Michigan Court of Appeals' determination that the evidence was admissible was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

Further, where, as here, the evidence was admitted by the trial court, Petitioner cannot demonstrate that the prosecutor committed misconduct in introducing that evidence. *Webb*, 586 F.3d at 397. "'A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings . . . .'" *Id.* (quoting *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008)). The Michigan Court of Appeals therefore properly concluded that Petitioner failed to demonstrate prosecutorial misconduct in soliciting the admission of the evidence of gang affiliation.

### C. Ground III: Improper Admission of Hearsay Evidence

In his third habeas ground, Petitioner argues that he was denied his right to due process and a fair trial by the trial court's admission of the testimony of the victim's parole officer, who testified that the victim had called her from the hospital and told her that "T" had shot him. The trial court admitted the evidence under Mich. R. Evid. 801(d)(1)(B) and (C).

As earlier discussed, a federal court sitting on habeas review has no authority to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. This Court therefore is bound by the state court's determination that the evidence was

admissible under Mich. R. Evid. 801(d)(1)(B) and (C).  *See Johnson*, 559 U.S. at 138; *Wainwright*, 464 U.S. at 84; *Thomas*, 898 F.3d at 700 n.1; *Stumpf*, 722 F.3d at 746 n.6.

Moreover, as the Sixth Circuit has held, the Supreme Court has never recognized that the Constitution is violated by the admission of unreliable hearsay evidence.  *Desai v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013).  Instead, the Supreme Court has merely "h[e]ld out the possibility that 'the introduction' of 'evidence' in general could be 'so extremely unfair that its admission violates fundamental conceptions of justice.'"  *Id.* at 631 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  Such a standard is highly general.  "'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations,'—and, it follows, the less likely a state court's application of the rule will be unreasonable."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Here, the admission of the victim's statement to his parole officer was relevant to whether the victim's trial identification of Petitioner as the shooter was newly fabricated.  The victim identified Petitioner to his parole officer and explained that he was afraid to identify Petitioner on the date of the shooting—the same date he denied to police that he knew his assailant.  Although Petitioner argues that he did not raise the issue of recent fabrication, Petitioner expressly challenged the victim's credibility on the ground that the victim had told the police a different story earlier.

Finally, even if the victim's statement to his parole officer were improperly admitted, any error was harmless.  Petitioner had the opportunity to cross-examine both the parole officer and the victim at trial.  The victim's statements to the parole officer—including the shooter's identity, the reason the victim did not want to tell the police, and the circumstances leading up to the shooting—were essentially identical to the testimony he gave at trial.  Petitioner

therefore fails to demonstrate that any error had a "substantial and injurious effect" on the result at trial. *Brecht*, 507 U.S. at 638.

For all these reasons, the court of appeals' determination on Petitioner's third habeas ground was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

## D. Ground IV: Ineffective Assistance of Counsel

Petitioner argues that his trial attorney rendered ineffective assistance of counsel both in failing to object to Petitioner's removal from the courtroom during voir dire and failing to object to the introduction of evidence of Petitioner's gang affiliation and to the prosecutor's reference to that evidence during closing arguments.

In *Strickland*, 466 U.S. 668, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Expressly applying the *Strickland* standard, the Michigan Court of Appeals found that Petitioner could demonstrate neither prong of the standard on either of his claims of ineffective assistance of counsel:

> A defendant raising a claim of ineffective assistance of counsel "bears the burden of proving that (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different."  *People v. Foster*, 319 Mich. App. 365, 391; 901 N.W.2d 127 (2017) (quotation marks and citation omitted); *see also Strickland v. Washington*, 466 U.S. 668, 687-688, 694; 104 S.Ct. 2052; 80 L.Ed. 2d 674 (1984).  "Effective assistance of counsel is presumed," and "[t]he defendant bears a heavy burden of proving otherwise."  *People v. Rockey*, 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999).  "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight."  *Id.* at 76-77.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Strickland*, 466 U.S. at 700.
>
> Here, defense counsel's decision not to object when defendant was removed from the courtroom did not constitute deficient performance. As previously noted, jury

selection involves matters of trial strategy. *Johnson*, 245 Mich. App. at 259. "[D]eclining to raise objections . . . can often be consistent with sound trial strategy." *Unger*, 278 Mich. App. at 242. Defense counsel in the instant case could have reasonably concluded that it was better to refrain from objecting to defendant's removal in order to avoid calling further attention to defendant's outburst or to prevent further outbursts by allowing defendant to calm down. Defense counsel also could have reasonably determined that any potentially damaging effect would be minimized by allowing the matter to proceed without prolonging the potential jurors' exposure to defendant's disruptive behavior. When evaluating an ineffective assistance of counsel claim, "a reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *People v. Gioglio (On Remand)*, 296 Mich. App. 12, 22-23; 815 N.W.2d 589 (2012), vacated in part on other grounds 493 Mich. 864 (2012). Therefore, defense counsel's performance was not below an objective standard of reasonableness. *Foster*, 319 Mich. App. at 391.

Furthermore, for the same reasons that defendant was not prejudiced by his removal from the courtroom, defendant has also failed to demonstrate that but for the lack of objection by defense counsel, the outcome of the proceedings would have been different. *Id.* Therefore, defendant has failed to demonstrate that he received ineffective assistance of counsel based on this ground. *Strickland*, 466 U.S. at 700.

With respect to defendant's next ineffective assistance of counsel claim regarding the references to his alleged gang affiliation, an objection likely would have been unsuccessful in preventing the testimony from coming in at trial because, as previously discussed, the testimony was admissible and the prosecutor's arguments were not improper in light of the defense theory presented at trial. "[F]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v. Pinkney*, 316 Mich. App. 450, 473; 891 N.W.2d 891 (2016) (quotation marks and citation omitted). Moreover, although defense counsel could have potentially obtained an appropriate limiting instruction had defense counsel objected to the testimony or closing argument, defense counsel may have determined that it was a better strategy to let the isolated references pass without objecting. Curry testified in detail about how he had run into defendant on more than one occasion after the shooting and was afraid of defendant because he had seen defendant with a gun. The Bemis Boys references were brief and without elaboration. Had defense counsel objected, he may have called greater attention to the alleged gang affiliation, potentially giving this minor, isolated fact more significance in the eyes of the jury. Therefore, defense counsel may have had a sound strategic reason for declining to object. *Gioglio*, 296 Mich. App. at 22-23. "[T]here are times when it is better not to object and draw attention to an improper comment," and "declining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy." *Unger*, 278 Mich. App. at 242 (quotation marks and citation omitted). On this record we cannot

conclude that defense counsel performed below an objective standard of reasonableness, *Foster*, 319 Mich. App. at 391.

Furthermore, defendant cannot establish that the outcome of the trial would have been different but for defense counsel's failure to object to these references because there was significant evidence of defendant's guilt; this evidence included additional testimony about Curry's hesitancy to come forward initially as a result of his fear of defendant, as well as Curry's unequivocal testimony that defendant shot him. *Id.* Therefore, defendant has also failed to demonstrate that he received ineffective assistance of counsel based on this ground. *Strickland*, 466 U.S. at 700.

*People v. Lee*, 2018 WL 442854, at *8-9.

Petitioner makes no attempt to challenge the court of appeals' determinations that Petitioner failed to overcome the strong presumption that counsel's failure to object to Petitioner's removal from the courtroom was objectively reasonable and a matter of trial strategy. Petitioner unquestionably refused to follow the court's instructions to be quiet and instead repeatedly interjected his own objections to the prosecutor's voir dire questions. As the court of appeals recognized, counsel as a matter of trial strategy could have concluded that Petitioner's ongoing behavior could bias the jury against Petitioner and that objecting to Petitioner's removal would further highlight that impact. As the court of appeals also noted, counsel could have concluded that Petitioner's removal would permit him to calm down while counsel attempted to blunt the impact of the earlier statements. The court of appeals therefore reasonably found that Petitioner had failed to overcome the presumption of adequate performance.

In addition, as this Court previously held, the trial court's error in excluding Petitioner from voir dire was harmless within the meaning of *Brecht*, 507 U.S. at 637. The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing

of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].").

Petitioner therefore fails to demonstrate either the performance or the prejudice prong of *Strickland* on his claim that counsel was ineffective in failing to object to Petitioner's removal from the courtroom during voir dire. He most certainly fails to overcome the double deference owed to the state-court's determination of the claim. *Harrington*, 562 U.S. at 105 (citing *Knowles*, 556 U.S. at 123); *see Burt*, 571 U.S. at 13; *Pinholster*, 563 U.S. at 190.

Petitioner's second claim of ineffective assistance of counsel fares no better. The court of appeals held that the limited mention of Petitioner's gang association, in context, was relevant and admissible under state law. As discussed, that determination is binding on this Court. As a result, any objection would have been frivolous. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Moreover, as also discussed, the Supreme Court has never held that the admission of such evidence violates the Constitution. Under these circumstances, sound trial strategy would have cautioned against objecting, to avoid drawing greater attention to the evidence. Petitioner utterly fails to overcome the presumption of trial strategy, much less to overcome the double deference owed to the state court's determination.

### E.  Improper Voir Dire Questioning

In Ground V of his petition, Petitioner again presents an intertwined claim of prosecutorial misconduct and trial court error.  He claims that the prosecutor committed misconduct by asking fact-specific questions of the jury during voir dire and that the court abused its discretion by allowing those question.  Petitioner also contends that the trial court abused its discretion and denied him a fair trial by permitting the line of questioning.  Finally, Petitioner argues that defense counsel rendered ineffective assistance when he failed to object to the questioning.

The Michigan Court of Appeals denied Petitioner's compound claim, as follows:

First, defendant appears to raise a claim of prosecutorial misconduct by arguing that the prosecutor improperly used facts specific to the case to form questions for the potential jurors during the portion of voir dire directly preceding his removal from the courtroom.  Defendant's claims of error related to prosecutorial misconduct during voir dire and jury selection are unpreserved because defendant never made an objection related to jury selection or the prosecutor's voir dire questions that he now challenges on appeal,[15] and defense counsel expressed satisfaction with the jury that was empaneled.  *Bennett*, 290 Mich App at 475; *Metamora Water Serv, Inc*, 276 Mich App at 382; *People v Taylor*, 195 Mich App 57, 59-60; 489 NW2d 99 (1992).

"The scope of voir dire examination of jurors is within the discretion of the trial judge and his decision will not be set aside absent an abuse of that discretion." *People v Harrell*, 398 Mich 384, 388; 247 NW2d 829 (1976).  However, unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.  This Court also reviews claims of prosecutorial misconduct for plain error affecting substantial rights if a defendant fails to make a contemporaneous objection or request for a curative instruction regarding an alleged error.  *Callon*, 256 Mich App at 329.  Where a defendant raises a prosecutorial misconduct issue and asserts a "violation of the general due-process right to a fair trial," without claiming that a "specific, enumerated constitutional right" was violated, as is the case here, the issue is nonconstitutional.  *Blackmon*, 280 Mich App at 260-262.  There is no error requiring reversal for unpreserved claims of prosecutorial misconduct "where a curative instruction could have alleviated any prejudicial effect."  *Ackerman*, 257 Mich App at 448-449.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial," *Dobek*, 274 Mich App at 63, and we evaluate the prosecutor's remarks in context, *Akins*, 259 Mich App at 562.  "A defendant who chooses a jury

trial has an absolute right to a fair and impartial jury," and "[t]he purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994) (opinion by MALLETT, J.). "The trial court has discretion in both the scope and the conduct of voir dire." *Id.* at 619. Specifically, MCR 6.412(C)(1) provides that

> [t]he scope of voir dire examination of prospective jurors is within the discretion of the court. It should be conducted for the purposes of discovering grounds for challenges for cause and of gaining knowledge to facilitate an intelligent exercise of peremptory challenges. The court should confine the examination to these purposes and prevent abuse of the examination process. [Emphasis added.]

The Michigan Supreme Court has "long recognized the importance of a voir dire that allows the court and the parties to discover hidden bias that would render a potential juror incompetent. *Tyburski*, 445 Mich at 619 (emphasis added). "[A] trial court may not restrict voir dire in a manner that prevents the development of a factual basis for the exercise of peremptory challenges." *Taylor*, 195 Mich App at 59.

In this case, before defendant began interjecting comments and was removed from the courtroom, the prosecutor was asking questions related the potential jurors' attitudes toward (1) listening to police testimony fairly; (2) listening fairly to the victim's testimony even though HE was involved with drugs, had told conflicting stories to the police, had lied, and had been labeled a snitch; and (3) physical evidence such as DNA and fingerprint evidence. In doing so, the prosecutor explained that it was typical to not have DNA or fingerprint evidence in a shooting like the instant case and that there was no such evidence in this case. The prosecutor also explained that the victim was the only person who would indicate that defendant was at the scene of the shooting. It is evident from examining the prosecutor's questions in context that the questions were directed at discovering whether any potential jurors held biases related to these issues that were central to a fair determination of the case in order to discover grounds for cause and intelligently exercise peremptory challenges. MCR 6.412(C)(1); *Tyburski*, 445 Mich at 619; *Taylor*, 195 Mich App at 59. The questioning was not inflammatory and was directly related and narrowly tailored to the pertinent issues of the case; such questioning is appropriate and proper. See *People v Dunham*, 220 Mich App 268, 270; 559 NW2d 360 (1996).

Moreover, at the beginning of voir dire, the trial court instructed the potential jurors that they would be asked questions probing their attitudes and beliefs in order to select an impartial jury. The jury that was selected was also instructed before the trial began that the jury was to decide the case based only on the admitted evidence, and the trial court further instructed the jury about the definition of evidence. Even if the prosecutor's questioning had been inappropriate, any prejudicial effect was cured by the trial court's instructions. *Unger*, 278 Mich App at 235. Therefore,

defendant has failed to show plain error based on the prosecutor's conduct during voir dir. *Carines*, 460 Mich at 763.

> [15] Defendant argues that his verbal outbursts that preceded his removal from the courtroom should be construed as a sufficient objection to preserve these arguments for appeal. However, as we previously stated, our review of the transcript leads us to conclude that defendant's statements could not be understood to constitute a formal "objection," much less an objection on any specific legal ground.

*Lee*, 2018 WL 442854, at *11-13.

The state court properly applied the standard for prosecutorial misconduct recited earlier in this opinion: whether any misconduct, under all of the circumstances, deprived Petitioner of a fair and impartial trial. *See Darden*, 477 U.S. at 181 (whether the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'") (quoting *Donnelly*, 416 U.S. at 643). The standard for Petitioner's due process claim concerning error by the trial judge is similar. When a petitioner asks a federal habeas court to examine his voir dire, the focus is on whether the decisions reached by the trial court during the voir dire prevented the empaneling of an impartial jury. *See Hill v. Brigano,* 199 F.3d 833, 844 (1999); *see also Wainwright v. Witt,* 469 U.S. 412, 423 (1985). In examining the merits of a claim of trial error during voir dire, a federal habeas court must be "guided by the traditionally broad discretion afforded the trial judge in conducting voir dire." *Hill,* 199 F.3d at 843 (citing *Mu'Min v. Virginia,* 500 U.S. 415, 424 (1991); *Ham v. South Carolina,* 409 U.S. 524, 528 (1973)). "So long as the court ensured that the defendant or defendants had 'a fair trial by a panel of impartial, "indifferent" jurors,' reversal is not mandated." *United States v. Phibbs*, 999 F.2d 1053, 1071 (6th Cir. 1993) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)), *cited in Byrd v. Collins*, 209 F.3d 486, 531 (6th Cir. 2000).

In the instant case, the Michigan Court of Appeals correctly determined that Petitioner had not been denied due process by either the prosecutor or the trial judge. In his memorandum in support of his habeas petition, Petitioner recites the line of questioning to which

he objected during voir dire. (Mem. of Law in Support of Pet., ECF No. 2, PageID.9-10, 49-51.) As the court of appeals held, the prosecutor's questions were narrowly tailored and directed at the legitimate purposes of ensuring that potential jurors would listen to police testimony fairly, listen to the victim fairly (despite the victim's involvement with drugs and prior inconsistent statements), and be willing to reach a verdict despite the absence of forensic evidence. None of the questions was improper, and all were directed at ensuring a panel of impartial jurors. Moreover, Petitioner makes no effort to dispute the court of appeals' factual findings that the jury was instructed that it was to base its verdict solely on the evidence introduced at trial and that the trial court defined what constituted evidence. Petitioner therefore fails to demonstrate that the state court's resolution of his due process claims was either based on an unreasonable determination of the facts or was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Because the prosecutor's voir dire questioning did not violate due process, any objection by counsel would have been futile. As earlier discussed, an attorney's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith*, 591 F.3d at 523; *O'Hara*, 499 F.3d at 506; *Harris*, 204 F.3d at 683.

For all these reasons, Petitioner's fifth habeas ground will be denied for lack of merit.

### F. Ground VI: Failure to Conduct Circuit Court Arraignment

In his sixth habeas ground, Petitioner argues that he should be granted habeas relief because the circuit court never arraigned him after he was bound over for trial following his preliminary examination in the district court.

Challenges to the propriety of initial proceedings in the state courts are not cognizable in federal habeas corpus, because they do not undermine the validity of a conviction. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002)

("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."); *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir.1986); *Lewis v. Procunier*, 746 F.2d 1073, 1075 (5th Cir. 1984) (allegation of defective indictment insufficient to state a claim for habeas relief); *Johnson v. Turner*, 429 F.2d 1152, 1154 (10th Cir. 1970) (alleged defect in state complaint not cognizable in habeas corpus); *Hogan v. Ward*, 998 F. Supp. 290, 294-95 (W.D.N.Y. 1998) (petitioner not entitled to relief on ground that state felony complaint was defective). Because Petitioner does not contest that he had notice of the charges against him, Petitioner had no federal constitutional right to an arraignment in the circuit court.

Moreover, to the extent that Petitioner claims that counsel was ineffective in failing to raise his state-law claim about the lack of an arraignment, his claim also fails. The court of appeals held that, under state law, a defendant may waive his arraignment by appearing with counsel for trial and that "a failure to arraign is a defect that is 'merely technical, affecting no substantial right whatever.'" *Lee*, 2018 WL 442854, at *13 (citing *People v. Weeks*, 130 N.W. 697, 698 (Mich. 1911). The court further held that "'[a] showing of prejudice is required to merit relief for the failure to hold a circuit court arraignment.'" *Id.* (quoting *People v. Nix*, 836 N.W.2d 224, 231-32 (Mich. Ct. App. 2013). Upon review, the court of appeals held that Petitioner was not prejudiced by the lack of a formal arraignment, because he was fully informed of the charges against him. *Id.* For the same reason, the court held, Petitioner could not demonstrate the prejudice prong of the *Strickland* standard. *Id.* at *14.

The court of appeals' determination is patently reasonable. Petitioner makes no attempt to argue how he was prejudiced by the lack of an arraignment. He does not argue that he lacked notice of the charges against him, nor could he. Petitioner received notice of the charges at his preliminary examination, and he previously was brought to trial on those charges, though the first trial ended with a mistrial. Because Petitioner was fully informed of the charges against

34

him and was able to defend himself on those charges, the failure to arraign in state court resulted in no prejudice. Plaintiff's sixth habeas ground therefore will be denied for lack of merit.

### G. Pending Motion

Petitioner has filed a second motion to alter the opinion, order, and judgment (ECF Nos. 6-8) entered on August 7, 2019, and the Court's order granting in part his first motion to alter the judgment (ECF No. 10) entered on September 26, 2019.

In an opinion, order, and judgment issued on August 7, 2019, the Court initially denied Petitioner's request for a stay of the proceedings while he exhausted additional claims and dismissed the action for lack of exhaustion, concluding that Petitioner had sufficient time to exhaust the new claims and return to this Court with all of his claims. Upon consideration of Petitioner's first motion to alter the judgment, the Court vacated the judgment and reopened the case for consideration of the original six exhausted issues; however the Court declined to reconsider the denial of the motion to stay.

Petitioner's second motion does not contest the Court's denial of the stay. He instead argues that the Court should consider his six exhausted issues. Petitioner's motion requests the relief the Court granted in its September 26, 2019, order, and this opinion fully considers all of the issues Petitioner seeks to have considered. As a consequence, Petitioner's second motion to alter the judgment (ECF No. 11) will be denied as moot.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).

Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   January 22, 2020               /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE